UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| WILLIAM L. GLOVER,<br>*Plaintiff*,<br>*v.*<br>PATRICK R. DONAHOE,<br>*Defendant*. | Civil No. 3:12cv189 (JBA)<br><br>November 23, 2013 |

**RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

On February 6, 2012, Plaintiff William L. Glover commenced this action against Defendant Patrick Donahoe, the Postmaster General, alleging constructive discharge and employment discrimination on the basis of his age and race in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.*, and Title VII, 42 U.S.C. § 2000e, *et seq.*, arising out Defendant's decision to issue a written warning to Plaintiff before his retirement. Defendant now moves [Doc. # 20] for summary judgment on each of Plaintiff's claims, arguing that Plaintiff has failed to establish a prima facie case of discrimination, that Plaintiff has failed to establish that Defendant's proffered reason for issuing the letter of warning was pretextual, and that Plaintiff failed to exhaust his constructive discharge claim before bringing this action. For the following reasons, Defendant's motion for summary judgment is granted.

I.      **Background[1]**

Plaintiff is African-American and was sixty-two years old when the events at issue in this case took place. (*See* Compl. [Doc. # 1] ¶ 4; Ans. [Doc. # 11] at 2.) Plaintiff was employed by the United States Postal Service ("USPS") as a Shipping Solutions Specialist,

---

[1] Plaintiff failed to file a Loc. R. 56(a)2 Statement in conjunction with his opposition to the motion for summary judgment. Pursuant to Loc. R. 56(a)1, all material facts in Defendant's Loc. R. 56(a)1 Statement that are supported by the evidence are deemed admitted as a result of Plaintiff's failure to comply with Loc. R. 56(a)2.

which is a sales position.  (*See* Compl. ¶ 5; Ans. at 2.)  There was one other Shipping Solutions Specialist in Plaintiff's district, L.K., who is a Caucasian woman and is three years younger than Plaintiff.  (*See* Compl. at ¶ 11; Ans. at 3–4.)  After January 2011, Plaintiff and L.K. were both supervised by Matthew Mackin.  (*See* Glover Dep. Tr., Ex. A to Def.'s Loc. R. 56(a)1 Stmt. at 81.)  There were two other Shipping Solutions Specialists in Connecticut, H.B. and W.K., but they were assigned to a different district under a different supervisor.  (*See* Glover Dep. Tr. at 27.)  Shipping Solutions Specialists are expected to implement the "Sales Management Process" ("SMP"), which includes researching, generating, and cultivating new leads in an employee's "funnel" by conducting twenty-five phone calls and two visits per day in order to generate one sale per week.  (*See* Mackin Aff., Ex. C to Def.'s Loc. R. 56(a)1 Stmt. [Doc. # 20-2] at 2.)  "The idea [behind the SMP] is that the more customers you touch, the more opportunities you have and more sales will come from that to make your year-end goal."  (*Id.*)

During the 2010 fiscal year, although Plaintiff had a satisfactory performance rating overall, his supervisors noted Plaintiff's difficulties in following the SMP.  In Plaintiff's mid-year review, his then-supervisor Gary Dubois indicated that Plaintiff needed to institute a "formal prospecting process to uncover more prospects" in order to meet his performance targets.  (*See* 2010 Performance Evaluation, Ex. H to Def.'s 56(a)1 Stmt. at 2.)  In his end-of-year review, Plaintiff's then-supervisor Karen Eller noted that Plaintiff was not performing at an acceptable level and advised that he needed to utilize the comprehensive prospecting process and manage his funnel properly "to work opportunities through the system."  (*Id.*)  In January 2011, when Mackin took over as Plaintiff's supervisor, Mackin put Plaintiff on notice "that he needed immediate improvement on his results" and gave Plaintiff specific instructions on how to achieve his

goals using the SMP.  (Mackin Aff. at 2; *see also* Jan. 27, 2011 Email from Mackin to Glover, Ex. I to Def.'s 56(a)1 Stmt. at 1.)

Between January and March of 2011, Mackin met with Plaintiff weekly and sent several emails informing Plaintiff that his performance needed to improve and that in order to meet his performance targets, he must follow the SMP.  (*See* Jan. 27, 2011 Email from Mackin to Glover; Feb. 25, 2011 Email from Mackin to Plaintiff and L.K., Ex. S to Def.'s 56(a)1 Stmt.; Mar. 3, 2011 Email from Mackin to Plaintiff , Ex. D to Def.'s 56(a)1 Stmt.; Mar. 21, 2011 Email from Mackin to Plaintiff and L.K., Ex. E to Def.'s 56(a)1 Stmt.) L.K. received similar emails from Mackin, but she missed most of the first quarter due to health reasons, and upon her return, Mackin concluded that she was implementing his instructions regarding the SMP and showing definite improvement in her performance. (*See* Mackin Aff. at 4.)   Plaintiff believed that Mackin had shifted the evaluation of performance from an emphasis on generating revenue to an emphasis on generating data and informed Mackin that he disagreed with this change.  (*See* Glover Dep. Tr. at 56–58.) Plaintiff also felt that his performance targets should have been adjusted because he had taken FMLA leave the previous year.  (*See id.* at 35–36, 58.)  However, Plaintiff believed in the SMP and disagrees that he was not "on board" with that process.  (*See id.* at 56.)

In 2011, the USPS offered a $20,000 incentive payment for eligible employees who retired on or before May 31, 2011.  (*See* 2011 Special Incentive Offer FAQs, Ex. J to Def.'s 56(a)1 Stmt.)  On April 1, 2011, Plaintiff applied to take advantage of this incentive.  (*See* Retirement Effective Date, Ex. R to Def.'s 56(a)1 Stmt.)  On April 26, 2011, Plaintiff had his quarterly review with Mackin.  (*See* Mackin Aff. at 3–4.)  At the outset of the review, Mackin asked Plaintiff whether he was planning to retire under the incentive program, and Plaintiff responded in the affirmative.  (*See id.*)  During the review Mackin informed

3

Plaintiff that "his performance had not improved and he had not utilized the specific instructions given to properly perform the job" (*id.* at 2), and issued a Letter of Warning to Plaintiff.  (*See id.* at 3.)  The Letter of Warning indicated that Plaintiff had failed to comply with specific instructions to implement the SMP to meet his performance targets. (*See* Letter of Warning, Ex. F to Def.'s 56(a)1 Stmt. at 1.)  Mackin stated that when Plaintiff retired, the Letter of Warning would be removed from his personnel file so that it would not hamper any post-retirement job search.  (*See* Mackin Aff. at 4; Glover Dep. Tr. at 24.)

On May 6, 2011, Plaintiff filed an internal grievance (a "650 Appeal") challenging the propriety of the Letter of Warning, stating that he disagreed with Mackin's characterization of his performance and requesting that the Letter of Warning be removed from his personnel file and that all copies be destroyed.  (*See* 650 Appeal, Ex. K to Def.'s 56(a)1 Stmt.)  On May 9, 2011, Mackin met with Plaintiff to discuss his 650 Appeal.  (*See* Glover Dept. Tr. at 25.)  During the meeting, Plaintiff asked whether the other Shipping Solution Specialists in Connecticut had received letters of warning, and Mackin informed Plaintiff that he could not discuss the disciplinary records of other employees.  (*See id.* at 25–28.)  Plaintiff then ended the meeting because he felt as though Mackin was giving "scripted" answers to his questions.  (*See id.* at 26.)  On May 31, 2011, Plaintiff retired pursuant to the special incentive offer.  (*See* Notice of Personnel Action, Ex. B to Def.'s 56(a)1 Stmt.)  Upon Plaintiff's retirement, Mackin removed the Letter of Warning from Plaintiff's file. (*See* Mackin Aff. at 4.)  On July 18, 2011, Plaintiff filed an Equal Employment Opportunity ("EEO") complaint against the USPS, claiming that he had been discriminated against on the basis of his age and race because he was the only Shipping Solutions Specialist to receive a letter of warning and because Mackin never

4

followed up on his 650 Appeal.  (*See* EEO Complaint, Ex. M to Def.'s  56(a)1 Stmt.)  A

Final Agency Decision on Plaintiff's EEO complaint was issued on December 31, 2011.

(*See* Compl. ¶ 3; Ans. at 1.)[2]

## II.    Discussion[3]

Plaintiff's claims for employment discrimination on the basis of his race and age

under Title VII and the ADEA are subject to the three-part burden shifting analysis

established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973).  *See McDonald v.*

*U.S. Postal Serv. Agency*, -- F. App'x -- , No. 12–4114–cv, 2013 WL 5681331, at *1 (2d Cir.

Oct. 21, 2013); *see also Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 105–107 (2d Cir.

2010) (applying the *McDonnell Douglas* analysis to a claim brought under the ADEA).

Under this analysis, the plaintiff bears the initial burden of establishing a prima facie case

of discrimination.  *Gorzynski*, 596 F.3d at 106 (quoting *McDonnell Douglas Corp.*, 411

U.S. at 802).  Once the plaintiff has established a prima facie case, "the burden shifts to

the defendant to articulate 'some legitimate, nondiscriminatory reason' for its action."  *Id.*

---

[2] The record is silent as to the outcome of Plaintiff's EEO complaint.

[3] Summary judgment is appropriate where, "resolv[ing] all ambiguities and draw[ing] all permissible factual inferences in favor of the party against whom summary judgment is sought," *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008), "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute regarding a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Williams v. Utica Coll. of Syracuse Univ.*, 453 F.3d 112, 116 (2d Cir. 2006) (internal quotation marks omitted). "The substantive law governing the case will identify those facts that are material, and '[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" *Bouboulis v. Transp. Workers Union of Am.*, 442 F.3d 55, 59 (2d Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). When considering a motion for summary judgment, the Court may consider depositions, documents, affidavits, interrogatory answers, and other exhibits in the record.  Fed. R. Civ. P. 56(c).

(quoting *McDonnell Douglas Corp.*, 411 U.S. at 802).   "If the defendant proffers a legitimate non-discriminatory reason for a challenged employment action, the presumption raised by the prima facie case is rebutted, and drops from the case." *Bickerstaff v. Vassar College*, 196 F.3d 435, 446 (2d Cir. 1999) (internal citations and quotation markss omitted).   "The plaintiff then has the opportunity to demonstrate that the proffered reason was not the true reason for the employment decision, and that race [or age] was." *Id.* (internal citations and quotation marks omitted).   "'A plaintiff bringing a disparate–treatment claim pursuant to the ADEA must prove, by a preponderance of the evidence, that age was the "but–for" cause of the challenged adverse employment action' and not just a contributing or motivating factor."   *Gorzynski*, 596 F.3d at 106 (quoting *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167 (2009)).   However, a plaintiff is permitted to advance an "age–plus" argument, to claim that he was discriminated against based on his membership in two protected classes.   *Id.* at 109 ("[W]e have recognized that a plaintiff's discrimination claims may not be defeated on a motion for summary judgment based merely on the fact that certain members of a protected class are not subject to discrimination, while another subset is discriminated against based on a protected characteristic shared by both subsets.   And, as other courts have explained, where two bases of discrimination exist, the two grounds cannot be neatly reduced to distinct components." (internal citations omitted)).

Defendant argues that it is entitled to summary judgment on Plaintiff's claims because (1) Plaintiff cannot establish a prima facie case of age or race discrimination; and

(2) Plaintiff cannot establish that the Defendant's proffered reason for its action is pretextual.[4]   To establish a prima facie case of employment discrimination, a plaintiff bears the burden of proving (1) that he was a member of a protected class; (2) that he was qualified for his position; (3) that he suffered an adverse employment action; and (4) circumstances giving rise to an inference of discrimination on the basis of his membership in the protected class.  *See generally*, *McDonnell Douglas Corp.*, 411 U.S. at 802.   Defendant argues that Plaintiff cannot satisfy the third or fourth elements of his prima facie case.[5]

### A.    Adverse Employment Action

"A plaintiff sustains an adverse employment action if he or she endures a materially adverse change in the terms and conditions of employment."  *Galabya v. N.Y. City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000) (internal quotation marks omitted). "To be materially adverse a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities."  *Id.* (internal citations and quotation marks omitted).   "A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation."  *Id.* (internal citations

---

[4] Defendant also argues that it is entitled to summary judgment on Plaintiff's constructive discharge claim for lack of exhaustion, and that Plaintiff's claim for punitive damages against the USPS fails as a matter of law.  At oral argument, Plaintiff's counsel withdrew Plaintiff's constructive discharge and punitive damages claims, and thus Defendant's motion is now moot as to these two claims.

[5] The parties do not dispute that Plaintiff is a member of two protected classes because he is African American and is over the age of forty.  Nor do the parties dispute that he was qualified for his position as a Shipping Solutions Specialist.

and quotation marks omitted).  Defendant argues that the Letter of Warning Plaintiff received on April 26, 2011 does not constitute an adverse employment action under this standard and thus Plaintiff cannot satisfy the third element of his prima facie case.[6]

Several courts outside this Circuit have held in the context of the USPS that "a letter of warning is generally considered insufficient to qualify as an adverse employment action."  *Ezell v. Potter*, 400 F.3d 1041, 1049 (7th Cir. 2005); *see also Burch v. Henderson*, No. 97-1095-CV-W-6, 2000 WL 97184, at *5 (D. Mo. Jan. 27, 2000) (holding that a Letter of Warning did not constitute an adverse employment action under Title VII).   Further, several district courts within this Circuit have questioned whether a USPS Letter of Warning could constitute an adverse employment action.  *See Scanlan v. Potter*, No. 1:05-CV-291 (JGM), 2007 WL 3231623, at *6 (D. Vt. Oct. 31, 2007) ("The Court doubts that a single warning letter is sufficient to constitute actionable employment action under Title VII."); *Moore v. Potter*, 353 F. Supp.2d 410, 415 ( E.D.N.Y. 2005) ("[I]t is questionable as to whether . . . the 'Proposed Letter of Warning in Lieu of Time-Off Suspension' constitutes an adverse employment action because the Plaintiff failed to establish what consequences, if any, were caused by . . . the letter of warning.").

The Second Circuit has noted generally that written warnings, in and of themselves, do not constitute adverse employment actions.  *Change v. Safe Horizons*, 254 F. App'x 838, 839 (2d Cir. 2007) ("In particular, we note that oral and written warnings do not amount to materially adverse conduct in light of our reasoning in *Joseph v. Leavitt*, 465 F.3d 87, 91 (2d Cir. 2006), in which we stated that '[t]he application of the

---

[6] Defendant also argues that Mackin's failure to follow up on Plaintiff's 650 Appeal did not constitute an adverse employment action.  At oral argument, Plaintiff's counsel clarified that Plaintiff was not claiming that Mackin's alleged failure to follow up on the 650 Appeal was an adverse employment action.

[employer's] disciplinary policies to [the employee], without more, does not constitute adverse employment action.'" (alterations in original)).   Thus, where an employee receives a written warning, but suffers no adverse effects in the terms of his or her employment as a result of that warning, the warning does not constitute an adverse employment action.  *See, e.g.*, *Weeks v. New York State (Div. of Parole)*, 273 F.3d 76, 86 (2d Cir. 2001) *abrogated on other grounds by Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002) ("Weeks, however, alleges no facts from which one could infer that the 'notice of discipline' created a materially adverse change in her working conditions.  She does not describe its effect or ramifications, how or why the effect would be serious, whether it went into any file, or even whether it was in writing.  It hardly needs saying that a criticism of an employee (which is part of training and necessary to allow employees to develop, improve and avoid discipline) is not an adverse employment action."); *Hill v. Children's Village*, 196 F. Supp. 2d 389, 400 (S.D.N.Y. 2002) ("The warning letter that was placed in [the plaintiff's] employment file is insufficient to constitute an adverse employment action because [the plaintiff] suffered no adverse action as a result of that document."); *Regis v. Metro. Jewish Geriatric Center*, No. 97-CV-0906 (ILG), 2000 WL 264336, at *8 (E.D.N.Y. Jan. 11, 2000) ("[D]isciplinary memoranda and evaluations are adverse employment actions only if they affect ultimate employment decisions such as promotion, wages, or termination.").

        In a Summary Order, the Second Circuit suggested in dicta, without elaboration, that a USPS Letter of Warning could qualify as an adverse action.  *See Porter v. Potter*, 366 F. App'x 195, 197 (2d Cir. 2010).  However, *Porter* was a retaliation case and thus reached a broader scope of employer conduct than is applicable to Plaintiff's discrimination

claims.  *See Burlington Northern & Santa Fe R.R. Co. v. White*, 548 U.S. 53, 67 (2006).[7]

Here, while the Letter of Warning Plaintiff received stated that "future incidents of this nature may result in further action, up to and including your removal from your Postal Service employment" (Letter of Warning at 2), it did not have the effect of a "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, [or] significantly diminished material responsibilities," *Galabya*, 202 F.3d at 640, and made clear that such consequences would follow only if Plaintiff continued his course of unsatisfactory performance (*see* Letter of Warning at 2).  Moreover, Plaintiff suffered no further employment consequences as a result of the Letter of Warning.  He retired pursuant to the incentive offer, which he had announced he would do before receiving the Letter of Warning, a little more than a month after receiving the Letter of Warning, and it was promptly removed from his personnel file upon his retirement in order to avoid any adverse impact on his future employment prospects.  (*See* Mackin Aff. at 4.)  Therefore, Plaintiff has not put forth sufficient evidence to establish that he suffered an adverse employment action as a result of receiving the Letter of Warning, and thus cannot satisfy the third element of his prima facie case for his Title VII and ADEA claims.

---

[7] At oral argument, Plaintiff acknowledged that if this Letter of Warning cannot be deemed an adverse employment action his case consequently fails.  In his opposition, Plaintiff does not dispute that the weight of authority is against him, and recognizes that these cases "admittedly[] suggest a certain approach in the Second Circuit that is less than congenial to the claim made in this case."  (Pl.'s Opp'n at 3.)  However, Plaintiff maintains that the Second Circuit's approach is at odds with the standard announced in *Burlington Northern*, which held that the test for a materially adverse action was whether or not a reasonable employee would find the action materially adverse.  548 U.S. at 68.  This reliance on *Burlington Northern* is misplaced, however, because the Supreme Court in that case was addressing the standard for retaliation claims, and in announcing the broader test for a materially adverse action, explicitly distinguished the narrower test for an adverse employment action in a discrimination claim.

**B.      Inference of Discrimination**

Defendant also argues that even if Plaintiff could show that he had suffered an adverse employment action, he has not put forth sufficient evidence based on which a jury could infer that Defendant issued the Letter of Warning as a result of Plaintiff's race and age.  Defendant argues that Plaintiff has not established that any of his claimed comparators are similarly situated, nor can he show that Mackin's questions regarding his retirement plans are sufficient to give rise to an inference of age discrimination.

"A plaintiff may raise . . . an inference [of discrimination] by showing that the employer subjected him to disparate treatment, that is, treated him less favorably than a similarly situated employee outside his protected group."  *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000).  "To be 'similarly situated,' the individuals with whom [a plaintiff] attempts to compare [himself] must be similarly situated in all material respects."  *Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 64 (2d Cir. 1997).  "An employee is similarly situated to co-employees if they were (1) subject to the same performance evaluation and discipline standards and (2) engaged in comparable conduct."  *Ruiz v. County of Rockland*, 609 F.3d 486, 493–94 (2d Cir. 2010).  However, "[w]hether two employees are similarly situated ordinarily presents a question of fact for the jury."  *Graham*, 230 F.3d at 39.

In his Complaint, Plaintiff identifies three comparators, L.K., W.K, and H.B, the three other Shipping Solutions Specialists in Connecticut, whom Plaintiff alleges were all younger than he was at the time he retired, and had "far fewer accomplishments of the mid-year goals."  (Compl. ¶ 11.)  Defendant argues that Plaintiff cannot establish that W.K. and H.B. were similarly situated to him because they reported to a different supervisor and Mackin therefore had no authority to issue written warnings to them.

11

(*See* Mackin Aff. at 4.)   The Second Circuit has previously held that where alleged comparators reported to a different supervisor than the plaintiff they were not similarly situated to the plaintiff for the purposes of establishing an employment discrimination claim.   *See, e.g.*, *Iuorno v. DuPont Pharm. Co.*, 129 F. App'x 637, 641 (2d Cir. 2005); *Shumway*, 118 F.3d at 64.   Plaintiff does not dispute that Mackin did not supervise W.K. and H.B. and had no ability to issue them written warnings based on their performance.

Mackin avers that as of the time the Letter of Warning was issued, he did not know the ages of any of the comparators (*see* Mackin Aff. at 4), and Plaintiff has not offered any evidence to rebut Mackin's assertion.   Further, not only were all of the proffered comparators over the age of forty, L.K. was only three and a half years younger than Plaintiff.   (*See* Compl. ¶ 11.)[8]   Because there is no evidence that Mackin knew the respective ages of the alleged comparators, even if the proffered comparators were similarly situated to Plaintiff, evidence of Plaintiff's disparate treatment in comparison to them could only be relevant to Plaintiff's race discrimination claim.

Plaintiff has offered no evidence of the alleged comparators' performance based on which a jury could infer that they engaged in comparable conduct such that they were similarly situated to Plaintiff.   The record contains nothing regarding the performance and disciplinary history of any of the alleged comparators.   In fact, Plaintiff has not even affirmatively established that W.K. and H.B. never received written warnings.   In his unsworn Complaint, Plaintiff makes the allegation that they had met fewer of their

---

[8] Plaintiff provides no competent proof of the ages of the alleged comparators beyond the allegations in the Complaint, although he testified in his deposition that he may have become aware of their dates of birth through the EEO investigation.   (*See* Glover Dep. Tr. at 69–70.)   Defendant's Answer neither admitted nor denied their birthdates based on the constraints of the Privacy Act, but did admit that L.K. was three and a half years younger than Plaintiff.   (Ans. at 3–4.)

performance goals than Plaintiff, but offers no evidence to support that claim.  In his deposition, Plaintiff asserted that he had seen figures on the internal USPS website indicating that L.K., W.K., and H.B. had generated less revenue than he had (*see* Glover. Dep. Tr. at 64), but he points to no evidence regarding their compliance with the SMP, or lack thereof.  Plaintiff also admitted in his deposition that he had no knowledge of whether L.K. was adequately executing the SMP.  (*See id.* at 67.)  Plaintiff's Letter of Warning was issued based on his alleged failure to comply with Mackin's specific instructions regarding the implementation of the SMP, and thus even if a record could establish that the alleged comparators generated less revenue than Plaintiff, that would not establish that their conduct was comparable to his in that they failed to follow the instructions of their supervisors regarding the SMP.  Mackin avers that there were no other employees with performance issues similar to Plaintiff who did not receive discipline.  (*See* Mackin Aff. at 4.)  Mackin further avers that L.K. received the same instructions regarding the SMP as Plaintiff, but that she "was following those and was showing definite improvement."  (*See id.*)  Plaintiff offers no evidence to rebut these statements:  Plaintiff offers no depositions or written and document discovery that might have demonstrated factual disputes as to the assertions in Mackin's affidavit.[9]  Plaintiff points to no other evidence in the record based on which a jury could infer that he was subjected to racial discrimination.  (*See* Glover Dep. Tr. at 40 (admitting that Plaintiff never observed Mackin say or do anything suggesting he harbored racial prejudice).)  Therefore, Plaintiff cannot establish the fourth element of his prima facie case with respect to his Title VII claim.

---

[9] As a result of Plaintiff's failure to file a 56(a)2 Statement, Plaintiff has actually admitted these facts for the purposes of this motion.

Defendant further argues that Mackin's inquiry as to Plaintiff's retirement plans does not give rise to an inference of age discrimination.  In support of this proposition, Defendant cites *Raskin v. Wyatt Co.*, 125 F.2d 55 (2d Cir. 1997).  In *Raskin*, the Second Circuit held that a supervisor's query during the discussion of a potential promotion as to why the plaintiff would be interested in the position so late in his career did not give rise to an inference of age discrimination based on the circumstances of the supervisor's remark.  *Id.* at 63.  The remark was made during a lunch the supervisor had invited the plaintiff to attend in order to assess the plaintiff's interest in the new position, and as soon as the plaintiff indicated that he had no intention of retiring the supervisor immediately turned the discussion to the mechanics of the promotion selection process.  *Id.*; *see also James v. New York Racing Ass'n*, 76 F. Supp. 2d 250 (E.D.N.Y.) (comment by employee who was not the primary decision maker regarding employment matters that there were too many supervisors and some of the older supervisors needed to retire did not give rise to an inference of discrimination and was merely a reflection of the economic realities of the business).

Although "[t]he Second Circuit has held that when an employer had a legitimate reason to question whether an employee was taking early retirement, the comments did not reflect a discriminatory animus, . . . the proper focus is on whether there is a nexus between the comments and the decision to terminate the employee." *Williams v. Quebecor World Infiniti Graphics*, 456 F. Supp. 2d 372, 386 (D. Conn. 2006) (internal citations omitted).  Here, the supervisor's query about Plaintiff's retirement plans was made during his performance review, when the Letter of Warning was issued.  (*See* Mackin Aff. at 4.)  Mackin told Plaintiff after asking whether he planned to retire, that if he did retire the Letter of Warning would be removed from his personnel file.  (*See id.*;

14

Glover Dep. Tr. at 24.)  Based on these circumstances, Mackin's comment conceivably could give rise to an inference of age discrimination.  However, Mackin avers that he asked every member of his team whether or not they were planning to take advantage of the incentive offer in order to avoid the unnecessary work of completing a full performance review on retiring employees.  (*See* Mackin Aff. at 3–4.)  Absent any evidence rebutting Mackin's asserted rationale for this inquiry, Plaintiff has failed to establish the fourth prong of his ADEA claim.  Therefore, Plaintiff has failed to make out a prima facie case of discrimination under either Title VII or the ADEA, and Defendant is thus entitled to summary judgment on each of Plaintiff's claims.

## III.   Conclusion

For the foregoing reasons, Defendant's Motion [Doc. # 20] for Summary Judgment is GRANTED.  The Clerk is requested to close this case.

IT IS SO ORDERED.

_____/s/_____

Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 23rd day of November, 2013.

15